ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| HON. JORGE ALFREDO RIVERA SEGARRA REPRESENTANTE DISTRITO 22; HON. HÉCTOR SANTIAGO TORRES SENADOR DISTRITO DE GUAYAMA; LCDA. YULIXA PAREDES ALBARRÁN ASPIRANTE A REPRESENTANTE DISTRITO 13; Y JORGE QUILES GORDILLO ASPIRANTE A REPRESENTANTE POR ACUMULACIÓN<br><br>Apelados<br><br>v.<br><br>HON. ANA IRMA RIVERA LASSEN ASPIRANTE COMISIONADA RESIDENTE MVC; EDGARDO CRUZ VÉLEZ ASPIRANTE COMISIONADO RESIDENTE MVC; ALEJANDRO SANTIAGO CALDERÓN ASPIRANTE SENADOR POR ACUMULACIÓN MVC; RAMÓN CRUZ DÍAZ ASPIRANTE SENADO POR ACUMULACIÓN MVC; EDWIN MARRERO MARTÍNEZ ASPIRANTE SENADO POR ACUMULACIÓN MVC; HON. RAFAEL BERNABÉ RIEFKOHL ASPIRANTE SENADOR POR ACUMULACIÓN MVC; HON. MARIANA NOGALES MOLINELLI ASPIRANTE REPRESENTANTE POR ACUMULACIÓN MVC; LCDO. OLVIN VALENTÍN RIVERA ASPIRANTE REPRESENTANTE POR ACUMULACIÓN MVC; GLADYS MYRNA CONTY HERNÁNDEZ ASPIRANTE REPRESENTANTE POR | **KLAN202400304**<br><br><br>**Consolidado**<br><br><br>**KLAN202400359** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV01020<br><br>Sobre: DESCALIFICACIÓN DE ASPIRANTE Y CANDIDATOS (Artículo 7.5, Ley 58-2020) |

Número Identificador
SEN2024 _____

ACUMULACIÓN MVC;
ANTHONY SÁNCHEZ
APONTE ASPIRANTE A
REPRESENTANTE POR
DISTRITO 38 PD;
STHEPHEN GIL ÁLAMO
ASPIRANTE A
REPRESENTANTE POR
DISTRITO 38 PD;
WILFREDO PÉREZ
TORRES ASPIRANTE A
REPRESENTANTE POR
DISTRITO 38 PD;
HON. JESSIKA
PADILLA RIVERA
PRESIDENTE
INTERINA CEE;
LCDA. LILLIAM
APONTE DONES
COMISIONADA
MOVIMIENTO
VICTORIA
CIUDADANA; LCDA.
VANESSA SANTO
DOMINGO CRUZ
COMISIONADA
PARTIDO NUEVO
PROGRESISTA; LCDA.
KARLA ANGLERÓ
COMISIONADA
PARTIDO POPULAR
DEMOCRÁTICO;
ROBERTO IVÁN
APONTE COMISIONADO
PARTIDO
INDEPENDENTISTA
PUERTORRIQUEÑO;
LCDO. NELSON
ROSARIO
COMISIONADO
PROYECTO DIGNIDAD;
Y PARTIDO
MOVIMIENTO
VICTORIA CIUDADANA

Apelantes

JOSÉ "Pichy"
TORRES ZAMORA;
KAREN RIQUELME
CABRERA; LEYDA
CRUZ BERRIOS; Y
MARIGDALIA
RAMÍREZ FORT

Interventores

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Per Curiam*

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparecen ante este foro Lillian Aponte Dones, Hon. Mariana Nogales Molinelli, Gladys Myrna Conty Hernández, Luis Alejandro Santiago Calderón, Hon. Ana Irma Rivera Lassén, Hon. Rafael Bernabé Riefkohl, Lcdo. Olvin A. Valentín Rivera y Movimiento Victoria Ciudadana (MVC) (en conjunto, "los apelantes"), mediante *Apelación Civil* presentada el 1 de abril de 2024. Solicitan la revisión de la *Sentencia* emitida el 21 de marzo de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, el foro primario denegó la solicitud de desestimación presentada por los apelantes, y declaró *Ha Lugar* la *Querella* presentada contra ellos, consecuentemente, quedaron descalificados los apelantes, y demás candidatos.

Por los fundamentos que expondremos a continuación, se **REVOCA** la *Sentencia* apelada.

**I.**

El 1 de febrero de 2024, el Hon. Jorge Alfredo Rivera Segarra, Representante del Distrito 22; el Hon. Héctor Santiago Torres, Senador del Distrito de Guayama; la Lcda. Yulixa Paredes Albarrán, aspirante a Representante del Distrito 13; y Jorge Quiles Gordillo, aspirante a Representante por Acumulación (en conjunto, "los apelados"), presentaron una *Demanda* solicitando la descalificación contra la Hon. Ana Irma Rivera Lassén, Aspirante a Comisionada Residente del MVC; Edgardo Cruz Vélez, Aspirante a Comisionado Residente de MVC; Luis Alejandro Santiago Calderón, Aspirante a Senador por Acumulación del MVC; Edwin Marrero Martínez, Aspirante a Senador por Acumulación del MVC; el Hon. Rafael Bernabé

Riefkohl, Aspirante a Senador por Acumulación del MVC; la Hon. Mariana Nogales Molinelli, Aspirante a Representante por Acumulación del MVC; el Lcdo. Olvin A. Valentín, Aspirante a Representante por Acumulación del MVC; Gladys Myrna Conty Hernández, Aspirante a Representante por Acumulación del MVC; Anthony Sánchez Aponte, Aspirante a Representante del Distrito 38 de Proyecto Dignidad (PD); Stephen Gil Álamo, Aspirante a Representante del Distrito 38 del PD; y Wilfredo Pérez Torres, Aspirante a Representante del Distrito 38 del PD, al amparo del Artículo 7.5 de la Ley Núm. 58-2020, conocida como el *Código Electoral de Puerto Rico de 2020*, según enmendada, 16 LPRA sec. 4615 (Código Electoral o Ley 58-2020).[1]    Posteriormente, presentaron moción enmendando la demanda, para incluir como parte indispensable al Sr. Ramón Cruz Díaz, Aspirante a Senador por Acumulación del MVC y al Partido Movimiento Victoria Ciudadana.[2]

En la querella, los apelados alegaron que los apelantes incumplieron con los requisitos estatutarios de presentación de endosos establecidos en el Código Electoral y en el *Reglamento de Radicación de Candidaturas de los Partidos Políticos y Candidaturas Independientes* (Reglamento de Radicación). Esbozaron que, el 30 de diciembre de 2023 era la fecha límite para que los partidos políticos presentaran los candidatos escogidos, cuando optaban por el método alterno, para que presentaran sus candidatos únicos, y MVC no presentó un candidato único a las candidaturas de Representante por Acumulación, Senado por Acumulación y Comisionada

---

[1] *Demanda*, anejo 1, págs. 1-17 del apéndice del recurso.
[2] *Moción en Cumplimiento de Orden y Presentando Demanda Enmendada*, anejo 56, págs. 468-484 del apéndice del recurso.

Residente. Mientras que, PD no presentó candidato único para la posición de Representante del Distrito 38. Añadieron que, el 31 de enero de 2024 era la fecha límite para entregar el cincuenta por ciento (50%) de los endosos requeridos por ley, sin embargo, MCV y PD no presentaron los endosos para los puestos antes descritos. Por lo tanto, solicitaron que fuera declarada *Ha Lugar* la querella, y consecuentemente, se descalificara a los apelantes por no cumplir con los requisitos estatutarios, conforme a al Artículo 7.5 de la Ley Núm. 58-2020.

El 11 de febrero de 2024, el Hon. José "Pichy" Torres Zamora, Representante por Acumulación, y Aspirante a nuevo término para dicho cargo; la Hon. Keren Riquelme Cabrera, Senadora por Acumulación y Aspirante a un nuevo término en dicho cargo; Leyda Cruz Berríos, Aspirante a Senadora por Acumulación; y la Hon. Wanda Del Valle Correa,[3] Representante del Distrito 38 y Aspirante a un nuevo término en dicho cargo (en conjuntos, "los interventores"), presentaron una *Demanda de Intervención*.[4] Posteriormente, la doctora Marigdalia Ramírez Fort, quien fue Aspirante para Comisionada Residente del Partido Nuevo Progresista (PNP), presentó también una *Demanda de Intervención*.[5] El foro primario, declaró *Ha Lugar*, a ambas demandas de intervención.[6]

---

[3] El 12 de febrero de 2024, los interventores presentaron *Moción Sometiendo Demanda de Intervención Enmendada*, para añadir como interventora a la Hon. Wanda del Valle Correa. Véase, anejo 63 págs. 512-513 del apéndice del recurso. El 13 de febrero de 2024, el foro primario, permitió la enmienda a la demanda de intervención y la inclusión como interventora de la Hon. Wanda del Valle.

[4] *Demanda de Intervención*, anejo 34, págs. 320-357 del apéndice del recurso.

[5] *Demanda de Intervención*, anejo 83, págs. 589-596 del apéndice del recurso.

[6] *Orden*, anejo 46 págs. 448-449 del recurso de epígrafe. Véase, además: *Orden*, anejo 97 págs. 646-647.

El 11 de febrero de 2024, la Hon. Rivera Lassén presentó *Moción de Desestimación por Falta de Jurisdicción*.[7] En esencia, expresó que los apelados son aspirantes primaristas del Partido Popular Democrático (PPD), que carecen de legitimación activa. Indicó que, no lograron demostrar que han sufrido o inminentemente sufrirán un daño real y específico, atribuible a la actuación de la Hon. Rivera Lassén. Por lo tanto, sostuvo que el pleito no era justiciable.

Por su parte, los apelados presentaron *Moción en Oposición a Solicitud de Desestimación Presentada por la Senadora Honorable Ana Irma Rivera Lassén*.[8] Alegaron que, la legitimación activa de éstos surge al amparo del Artículo 5.1 del Código Electoral.[9] Por consiguiente, arguyeron que el incumplimiento de los apelantes con el requisito dispuesto en la Ley y reglamento, **inflige un daño a todos los electores en Puerto Rico.** (Énfasis nuestro)

El 12 de febrero de 2024, fue celebrada una vista argumentativa, a la cual comparecieron todas las partes a través de sus representantes legales. En dicha vista, el foro primario informó que estaría resolviendo todos los argumentos en conjunto.

El 13 de febrero de 2024, la Hon. Rivera Lassén, presentó una *Réplica a Oposición a Moción de Desestimación por Falta de Jurisdicción*, en la cual

---

[7] *Moción de Desestimación por Falta de Jurisdicción*, anejo 35, págs. 358-364 del apéndice del recurso.

[8] *Moción en Oposición a Solicitud de Desestimación Presentada por la Senadora Honorable Ana Irma Rivera Lassén*, anejo 39, págs. 390-411 del apéndice del recurso.

[9] Artículo 5.1. — Derechos y Prerrogativas de los Electores. — (16 LPRA sec. 4561)

[…]

"*Se concede a los electores la legitimación activa para iniciar o promover cualesquiera acciones legales al amparo de este Artículo, ante el Tribunal de Primera Instancia que corresponda de conformidad con el Capítulo XIII de esta Ley.*"

reiteró su solicitud de desestimación por falta de jurisdicción ante la ausencia de legitimación activa por parte de los apelados e interventores.[10]  En síntesis, esbozó que los apelados no establecieron cuál es el daño que sufrirían por las aspiraciones a Comisionada Residente, cuando ninguno de ellos compite para ese puesto.

Luego de varias incidencias procesales, el 20 de febrero de 2024, el Hon. Rafael Bernabé Riefkohl presentó una *Moción de Desestimación*.[11]  Sostuvo que, el reclamo de los apelados, quienes alegan demandan en carácter de elector, no es real, puesto que, sus reclamos son como candidatos.  Señaló que, éstos presentaron la querella, alegando que, "sería una clara violación a la igual protección de las leyes, en la medida en que cualquier otro candidato en igual posición tuvo que acogerse a las disposiciones del Código Electoral del 2020 y cumplir con la presentación de endosos para su candidatura."  Por lo tanto, expresó que éstos no han sufrido un daño a causa de la conducta de los apelantes, consecuentemente no tienen legitimación activa, ni como electores, ni candidatos.

A su vez, en la misma fecha, el Hon. Bernabé presentó una *Moción en Solicitud de Sentencia Sumaria*.[12] En esencia, expresó que el 12 de noviembre de 2023, el Consejo Ciudadano Nacional del Movimiento Victoria Ciudadana aprobó su *Reglamento para la Elección de Candidatura para las Elecciones Generales de 2024 del*

---

[10] *Réplica a Oposición a Moción de Desestimación por Falta de Jurisdicción*, anejo 70, págs. 553-558 del apéndice del recurso.
[11] *Moción de Desestimación*, anejo 99, págs. 652-659 del apéndice del recurso.
[12] *Moción en Solicitud de Sentencia Sumaria,* anejo 100, págs. 660-694 del apéndice del recurso.

*Movimiento Victoria Ciudadana* (Reglamento de Método Alterno del MVC). En dicho Reglamento, determinaron que "las personas que se sometan al presente proceso de nominación y elección de candidaturas, no tendrán que cumplir con los requisitos de presentación de peticiones de endoso para Primarias de Ley para calificar como candidata o candidato del Movimiento." Sostuvo que, el Reglamento de Método Alterno del MVC fue presentado ante la CEE, y el Lcdo. Rolando Cuevas Colón, Secretario de la CEE, emitió una Certificación mediante la cual indicó que, "el Movimiento Victoria Ciudadana (MVC) cumplió con la entrega de su correspondiente reglamento a la fecha del 30 de noviembre de 2023 [...]." Posteriormente, alegó que, luego de realizar los trámites correspondientes para la presentación de su candidatura, recibió varias notificaciones de la CEE, entre ellas que, "su notificación de intención de candidatura había sido aceptada por la CEE y que debía pasar por la unidad de Radicaciones de la CEE para ser orientado y recoger las peticiones de endoso (si aplica)." Asimismo, sostuvo que los apelados no cuestionaron las actuaciones de la CEE con respecto de la aceptación de las nominaciones a candidaturas de los apelantes.

Finalmente, esbozó que tanto la Ley como los reglamentos identifican una serie de garantías mínimas que el método alterno debe observar. Por lo que, dichas garantías protegen a los aspirantes frente al método alterno que su partido escoja. Así las cosas, reitera que la Ley no exige la entrega de endosos en el método alterno, ni autoriza a la CEE a que exija la entrega de endosos en el método alterno, sea antes o después del 30 de diciembre de 2023.

El 20 de febrero de 2024, los apelantes presentaron *Contestación a Querella Enmendada y Moción de Sentencia Sumaria*.[13] Inicialmente, sostuvieron que los apelados e interventores carecen de legitimación activa estatutaria. En síntesis, alegaron que el Artículo 7.5 del Código Electoral, el cual los apelados e interventores recurrieron, no otorga ni concede legitimación activa a ninguna persona para instar una acción como la de autos. Por lo que, en ausencia de una autorización expresa por virtud de ley que les reconozca legitimación activa para incoar la acción de descalificación, los apelados e interventores debieron demostrar que han sufrido un daño claro y palpable, que el daño es real, inmediato y preciso, no abstracto o hipotético, que existe un nexo entre el daño sufrido y la causa de acción ejercitada y que la causa de acción surge al palio de la Constitución o de una ley. Sin embargo, expresaron que los apelados e interventores tampoco lograron demostrar que cumplen con dichos requisitos, puesto que, un partido y sus aspirantes o candidatos carecen de legitimación para cuestionar el proceso interno de selección de candidaturas de un partido ajeno. A su vez, que el método de selección alterna al que se acogió su partido, no les afecta o supone un daño específico.

En cuanto a la controversia sobre el requisito de presentación de endosos, argumentaron que el método alterno de selección de candidatos es un mecanismo independiente y separado al mecanismo de las primarias, por lo tanto, no está sujeto al requisito de presentación

---

[13] *Contestación a Querella Enmendada y Moción de Sentencia Sumaria*, anejo 106, págs. 733-1019 del apéndice del recurso.

de endosos. Así pues, reiteraron que han cumplido con todos los criterios establecidos en la Ley y Reglamento, y no deben ser descalificados.

En igual fecha, el Sr. Stephen David Gil Álamo presentó una *Contestación a la Demanda Enmendada*.[14] Entre las defensas afirmativas, alegó que, es el único candidato que tiene Proyecto Dignidad a Representante por el Distrito Representativo 38, por lo que, al no ser candidato primarista, ni independiente, como tampoco candidato por método alterno, no tenía que recolectar endosos. En vista de lo anterior, solicitó que la querella fuera declarada no ha lugar contra su persona.

Posteriormente, compareció Movimiento Victoria Ciudadana mediante una *Moción de Desestimación*, al amparo de la Regla 10.2 de Procedimiento Civil por la querella no justificar la concesión de un remedio.[15] Al igual que los apelantes, MVC sostuvo que los apelados e interventores no tenían legitimación activa. Explicó que en nada les afecta el estatus de los apelantes como aspirantes o candidatos por sus respectivos partidos, puesto que, no tienen injerencia alguna en el proceso interno de selección de sus candidatos. En segundo lugar, añadió que no hay ninguna disposición en el Código Electoral que le requiriera o autorizara a la CEE a requerirle a un partido político, el cual se acogió al método alterno, que sus aspirantes entregaran endosos para poder participar de dicho método alterno como parte

---

[14] *Contestación a la Demanda Enmendada*, anejo 107, págs. 1020-1030 del apéndice del recurso.
[15] *Moción de Desestimación*, anejo 108 págs. 1031-1059 del apéndice del recurso. La Hon. Ana Irma Rivera Lassén, presentó una moción adoptando por referencia los planteamientos de derecho expuestos en la moción de desestimación, presentada por MVC. Véase, *Moción en cuanto a Moción de Desestimación del Partido Movimiento Victoria Ciudadana (MVC)*, anejo 115, pág. 1078 del apéndice del recurso.

del proceso de selección de candidaturas. Finalmente, arguyó que no procedía prohibirle al partido poder presentar candidaturas a los tres puestos en controversia, cuando eximió a sus aspirantes de recoger endosos como parte del proceso interno de selección de candidatos. Debido a que, les causaría daños graves e irreparables no solo al MVC y los candidatos individuales, sino a los electores en general y a la democracia pues se le privará de opciones en la papeleta.

De igual forma, el Lcdo. Olvin Valentín Rivera, Aspirante a Representante por Acumulación MVC, presentó una *Solicitud de Sentencia Sumaria y Contestación a Querella*.[16] Mediante esta, reiteró las alegaciones de los apelantes y demás candidatos, sobre la falta de legitimación activa de los apelados e interventores. A su vez, sostuvo que los aspirantes bajo un partido que se acogió al proceso de método alterno no tenían que cumplir con el requisito de recogido de endosos. Por lo tanto, solicitó que se le diera deferencia a la interpretación de la CEE, al validar la aceptación sobre su intención de candidatura, y que el requisito de recogido de endosos no le era aplicable.

El 20 de febrero de 2024, la Hon. Rivera Lassén presentó *Contestación a Demandas y Moción de Sentencia Sumaria*.[17] Adoptó por referencia las argumentaciones de derecho presentadas en las mociones del Hon. Bernabé, y del grupo de aspirantes de MVC. Sin embargo, en su moción añadió que el puesto de comisionado residente no aparece mencionado en la Constitución de Puerto Rico.

---

[16] *Solicitud de Sentencia Sumaria y Contestación a Querella*, anejo 117, págs. 1081-1208 del apéndice del recurso.
[17] *Contestación a Demandas y Moción de Sentencia Sumaria*, anejo 118, págs. 1209-1238 del apéndice del recurso.

Debido a que, "la comisaría residente es una figura federal de naturaleza estatutaria que nació al palio de los poderes plenarios del Congreso bajo la Cláusula Territorial y cuya única y exclusiva fuente regulatoria se encuentra en la Ley de Relaciones Federales." Por lo tanto, arguyó que el reglamento electoral que pretendió "ponerle trabas" a una candidatura federal, es *ultra vires*. Finalmente, reiteró que cumplió en todo momento con el Artículo 7.11 del Código Electoral, con el procedimiento interno establecido por el MVC para el método alterno que adoptó ese partido político y las representaciones de la CEE.

El Lcdo. Nelson Rosario Rodríguez, como Comisionado Electoral de Proyecto Dignidad, presentó el escrito titulado *Postura del Comisionado Electoral de Proyecto Dignidad y Solicitud de Desestimación*.[18] Alegó que, el *Reglamento para la Radicación de Candidaturas de los Partidos Políticos y Candidaturas Independientes*, es un borrador, el cual no es vinculante, y en la alternativa de no ser un borrador, sería nulo. Sostuvo que no se cumplió con el trámite para su aprobación, como tampoco se podía adoptar una reglamentación que impusiera requisitos adicionales a los establecidos en ley. Además, añadió que, de las alegaciones de la querella se desprenden alegaciones dirigidas a actuaciones que corresponden a Proyecto Dignidad. Por lo que, al dejar de acumular a una parte indispensable, aun teniendo la oportunidad de enmendar la demanda, les causaba una demora innecesaria e indebida perjudicando a las demás partes interesadas en el pleito.

---

[18] *Postura del Comisionado Electoral de Proyecto Dignidad y Solicitud de Desestimación*, anejo 119, págs. 1239-1433 del apéndice del recurso.

El 20 de febrero de 2024, MVC presentó su *Contestación a Demanda Enmendada*.[19] De igual forma, presentaron la *Contestación a Demanda de Intervención del Honorable José Torres Zamora y Otros*.[20]

El 23 de febrero de 2024, los interventores presentaron su *Oposición a Sentencia Sumaria y Moción de Desestimación Solicitud de Determinación ante Falta de Controversia sobre Hechos Materiales y Pertinentes*.[21] En esencia, argumentaron que sufrieron un daño claro y palpable al querer aplicarle de manera desigual la reglamentación electoral. Esbozaron que, permitirles a los apelantes tener acceso a la papeleta, sin cumplir con los requisitos electorales, sería una desventaja, por ende, un daño. Asimismo, sostuvieron que, el Código Electoral y el Reglamento de Radicación son claros en requerir la presentación de endosos a los aspirantes que compiten en un procedimiento de método alterno. Por ello, sostuvieron que los apelantes y demás aspirantes que no fueron presentados como candidatos únicos y que no cumplieron con el requisito de endosos establecido en el Código Electoral y su reglamentación, no pueden certificarse como aspirantes.

El 24 de febrero de 2024, los apelados presentaron *Moción en Cumplimiento de Orden y Oposición a Solicitudes de Desestimación y Solicitudes de Sentencia Sumaria y Solicitud para que se conceda remedio por no existir controversias de hechos materiales*.[22] En

---

[19] *Contestación a Demanda Enmendada*, anejo 120, págs. 1434-1438 del apéndice del recurso.
[20] *Contestación a Demanda de Intervención del Honorable José Torres Zamora y Otros*, anejo 121, págs. 1439-1443 del apéndice del recurso.
[21] *Oposición a Sentencia Sumaria y Moción de Desestimación Solicitud de Determinación ante Falta de Controversia sobre Hechos Materiales y Pertinentes*, anejo 132, págs. 1493-1542 del apéndice del recurso.
[22] *Moción en Cumplimiento de Orden y Oposición a Solicitudes de Desestimación y Solicitudes de Sentencia Sumaria y Solicitud para*

apretada síntesis, reiteraron que los reglamentos aprobados por la CEE fueron debidamente notificados y publicados sin que los apelantes y demás aspirantes los impugnaran. Consecuentemente, al éstos no presentar los endosos en el término dispuesto, el Artículo 7.5 del Código Electoral, provee la solicitud de descalificación de los candidatos que no cumplen con los requisitos de ley y reglamentos.

Finalmente, alegaron que no procede la solicitud de desestimación presentada por el Lcdo. Nelson Rosario, como Comisionado Electoral de Proyecto Dignidad. Debido a que, primero, Proyecto Dignidad no impugnó la aprobación del Reglamento de Radicaciones; y segundo, que el Código Electoral solamente reconoce legitimidad a los Comisionados Electorales, y no a los partidos.

En desacuerdo, el 27 de febrero de 2024, el Lcdo. Rosario presentó una réplica a la moción instada por los apelados.[23] Mediante esta, sostuvo que la notificación de la Resolución CEE-RS-23-012 fue defectuosa, incorrecta e insuficiente, por lo que, el término para recurrir de la determinación no comenzó a transcurrir. De otra parte, expresó que Proyecto Dignidad es una parte indispensable, puesto que, solicitan la descalificación de un candidato y aspirante del partido, por lo tanto, el partido se perjudicaría si se elimina esa candidatura.

En respuesta, los apelados presentaron una Moción en *Dúplica a "Réplica" del Comisionado de Proyecto*

_____

que se conceda remedio por no existir *controversias de hechos materiales*, anejo 133, págs. 1543-1850 del apéndice del recurso.
[23] *Réplica a "Moción en Cumplimiento de Orden y Oposición a Solicitudes de Desestimación y Solicitudes de Sentencia Sumaria y Solicitud para que se conceda remedio por no existir controversias de hechos materiales*, anejo 140, págs. 1878-1883 del apéndice del recurso.

*Dignidad*.[24]  Manifestaron que, que los intereses de PD en la CEE están debidamente representados por su Comisionado Electoral. Por ende, la jurisdicción sobre el partido la obtuvieron con el emplazamiento del Lcdo. Rosario.

El 8 de marzo de 2024, fue celebrada una vista argumentativa, en la cual, el foro primario dio por sometida la controversia.

Así pues, luego de evaluar los escritos sometidos por todas las partes, el 21 de marzo de 2024, el foro primario emitió la *Sentencia* apelada.[25] Mediante esta, el foro *a quo* dictó las siguientes determinaciones de hecho:

> 1. El Movimiento Victoria Ciudadana abrió su proceso de presentación de precandidaturas el 12 de agosto de 2023.
>
> 2. El Movimiento Victoria Ciudadana celebró una Asamblea Ciudadana Nacional el 13 de agosto de 2023 en donde su matrícula decidió que como partido político se acogerían al proceso de método alterno para la selección de sus candidaturas para las elecciones generales de 2024.
>
> 3. En dicha Asamblea, la matrícula del Movimiento Victoria Ciudadana determinó cuáles serían sus objetivos electorales, los cuales incluyeron la presentación de candidaturas a los cargos de gobernación, comisaría residente, Senado por acumulación, Cámara de Representantes por acumulación, distritos senatoriales, distritos de representantes, alcaldías y legislaturas municipales.
>
> 4. El 30 de noviembre de 2023, el Lcdo. Manuel Natal Albelo, Coordinador General del Movimiento Victoria Ciudadana, le notificó a la Comisión Estatal de Elecciones que "[e]n la Asamblea Ciudadana Nacional celebrada el 13 de agosto de 2023, de acuerdo con las disposiciones estatutarias contenidas en el Código Electoral de Puerto Rico de 2020, Ley 58-2020, se acordó el proceso de nominación y elección de candidaturas a través del

---

[24] *Dúplica a "Réplica" del Comisionado de Proyecto Dignidad*, anejo 142, págs. 1887-1893 del apéndice del recurso.
[25] *Sentencia*, anejo 164, págs. 1972-2002 del apéndice del recurso.

Método Alterno de Nominación". Dicha notificación se formalizó por conducto de la Comisionada Electoral del MVC, Lillian Aponte Dones.

5. El 12 de noviembre de 2023, el Consejo Ciudadano Nacional del Movimiento Victoria Ciudadana aprobó su Reglamento para la Elección de Candidaturas para las Elecciones Generales de 2024 del Movimiento Victoria Ciudadana.

6. El Reglamento de Método Alterno del MVC fue presentado ante la Comisión Estatal de Elecciones, como requiere el Código Electoral de 2020.

7. El Secretario de la Comisión Estatal de Elecciones, Lcdo. Rolando Cuevas Colón, emitió una Certificación en donde se certifica que "de conformidad con el Artículo 7.14(3) del Código Electoral de Puerto Rico de 2020 y el Reglamento de Radicación de Candidaturas de los Partidos Políticos y Candidaturas Independientes, aprobado por la CEE, el Movimiento Victoria Ciudadana (MVC) cumplió con la entrega de su correspondiente reglamento a la fecha del 30 de noviembre de 2023, identificado como Reglamento para la Elección para las Candidaturas de las Elecciones Generales de 2024 del Movimiento Victoria Ciudadana".

8. Ningún funcionario de la Comisión Estatal de Elecciones hizo señalamiento alguno respecto al Reglamento de Método Alterno del MVC.

9. La Comisión Estatal de Elecciones maneja la presentación de candidaturas mediante el Sistema de Notificación de Intención de Aspirar a una Candidatura y Sistema de Endosos (SIEN).

10. La querellada Hon. Ana Irma Rivera Lassén presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Comisionada Residente y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

11. El querellado Edgardo Cruz Vélez presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de

Comisionado Residente y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

12. La querellada Hon. Mariana Nogales Molinelli presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Representante por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

13. El querellado Lcdo. Olvin Valentín Rivera presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Representante por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

14. La querellada Gladys Myrna Conty Hernández presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Representante por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

15. El querellado Hon. Rafael Bernabé Riefkohl presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Senador por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

16. El querellado Edwin Marrero Martínez presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Senador por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

17. El querellado Luis Alejandro Santiago Calderón presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Senador por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN, la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos"**.

18. El querellado Ramón Cruz Díaz presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Senador por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024.

19. El Hon. Rafael Bernabé Riefkohl es aspirante al cargo electivo de Senador por Acumulación al Senado de Puerto por el Movimiento Victoria Ciudadana (en adelante

"MVC"), quien como afiliado del MVC, se acogió al proceso de método alterno para la selección de candidaturas para la Elección General de 2024, conforme al Código Electoral vigente. (SS BERNABE)

20. El Senador recibió notificación de la CEE acreditando que su notificación de intención de candidatura había sido debidamente recibida por el partido MVC.

21. El mismo 22 de diciembre de 2023 se recibió una segunda notificación de la CEE acreditando que su notificación de intención de candidatura había sido aceptada por la CEE y que debía pasar por la unidad de Radicaciones de la CEE para ser orientado y recoger las peticiones de endoso (si aplica). Dicha determinación de acreditación por parte de la CEE tiene número de control CEE-2024-EG-02413 según surge del SIEN.

22. Al 15 de febrero de 2024, todos los demandantes e interventores (excepto la interventora Marigdalia Ramírez Fort), en su capacidad de aspirantes primaristas bajo el Partido Popular Democrático y el Partido Nuevo Progresista, respectivamente, cumplieron con el requisito de haber presentado el 100% de los endosos requeridos por la legislación electoral vigente bajo el método de selección de primarias.

23. El Lcdo. Olvin A. Valentín Rivera es aspirante al cargo electivo de representante por acumulación a la Cámara de Representantes por el MVC, quien se acogió al proceso de método alterno para la selección de candidaturas para la Elección General de 2024.

24. Antes del jueves 30 de noviembre de 2023, el Lcdo. Valentín Rivera comenzó a procesar y descargar los documentos y certificaciones requeridas para el proceso de radicación de su intención de candidatura e intención de aspiración para el cargo de representante por acumulación a la Cámara de Representantes.

25. El jueves 30 de noviembre de 2023, el Lcdo. Valentín Rivera entró al sistema SIEN para crear su perfil y datos de aspiración, lo cual generó el Formulario Informativo para Aspirantes a Puestos Electivos (intención de candidatura), que debía ser notarizado y entregado en la oficina de la Comisionada Electoral del MVC.

26. El sistema SIEN emitió una notificación al Lcdo. Valentín por correo electrónico,

indicando que "su notificación de intención de candidatura fue enviada exitosamente a su partido".

27. Entre el 1 al 3 de diciembre de 2023, el Lcdo. Valentín Rivera consiguió los documentos y certificaciones requeridas para la presentación de su candidatura y juramentó su Formulario Informativo para Aspirantes a Puestos Electivos (intención de candidatura) ante un abogado notario.

28. El 3 de diciembre de 2023, la oficina de la Comisionada Electoral del MVC estableció un centro de recogido de documentos e intenciones de candidaturas de todas los potenciales candidatos o aspirantes. Ese día el Lcdo. Valentín Rivera entregó todos los documentos que tenía, incluyendo el formulario de intención de candidatura y las planillas de los 9 años que le fueron entregadas, quedando pendiente únicamente la planilla del 2015.

29. El miércoles 13 de diciembre de 2023, el Lcdo. Valentín Rivera recibió una notificación del sistema SIEN indicando que "su notificación de intención de candidatura fue recibida por el partido".

30. El 30 de noviembre de 2023, el Lcdo. Manuel Natal Albelo, Coordinador General del Movimiento Victoria Ciudadana, le notificó a la Comisión Estatal de Elecciones que "[e]n la Asamblea Ciudadana Nacional celebrada el 13 de agosto de 2023, de acuerdo con las disposiciones estatutarias contenidas en el Código Electoral de Puerto Rico de 2020, Ley 58-2020, se acordó el proceso de nominación y elección de candidaturas a través del Método Alterno de Nominación". En esa misma fecha se le notificó a la Comisión Estatal de Elecciones copia del "Reglamento para la Elección de Candidaturas para las Elecciones Generales de 2024 del Movimiento Victoria Ciudadana" aprobado por el Consejo Ciudadano Nacional.

31. El Lcdo. Olvin Valentín Rivera presentó su intención de candidatura por el Movimiento Victoria Ciudadana al puesto de Representante por Acumulación y cumplió con todos los requisitos de presentación de documentos en o antes del 2 de enero de 2024. En la plataforma de SIEN la Comisión Estatal de Elecciones le notificó que su solicitud de intención había sido aceptada por la Comisión. Además, la agencia le notificó y representó en dicha plataforma que: **"Si su partido ha sido acogido por método alterno de selección según el Código**

**Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos".**

(Énfasis nuestro)

En ese sentido, el tribunal inició determinando que los apelados no tenían legitimación activa para presentar la causa de acción, puesto que, no sufren un daño claro y palpable, ni estaban en desventaja en la elección general. Sin embargo, en cuanto a los interventores, dispuso que tenían legitimación activa, ya que son candidatos que estarán participando en las elecciones como candidatos, y cumplieron con el requisito de presentar los endosos correspondientes.

En cuanto a la controversia sobre si los apelantes tenían o no la obligación de presentar los endosos, aun cuando se acogieron a un método alterno de nominación, expresó que, los apelantes son Aspirantes, conforme los define el Código Electoral, y debieron haber presentado las peticiones de endosos requeridas para los puestos que interesaban aspirar. Consecuentemente, declaró *Ha Lugar* a la *Querella* presentada, quedando descalificados, la Hon. Ana Irma Rivera Lassén, Edgardo Cruz Vélez, Alejandro Santiago Calderón, Ramón Cruz Díaz, Edwin Marrero Martínez, Hon. Rafael Bernabé Riefkohl, Hon. Mariana Nogales Molinelli, Lcdo. Olvin Valentín Rivera, Gladys Myrna Conty Hernández, Anthony Sánchez Aponte, Stephen Gil Álamo y Wilfredo Pérez Torres.[26]

---

[26] El 1 de abril de 2024, el Lcdo. Nelson Rosario, Comisionado Electoral de Proyecto Dignidad, presentó una *Moción de Reconsideración*. Véase, entrada núm. 170 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). El 2 de abril de 2024, el foro primario, mediante una *Orden* expresó "Nada que proveer. Asunto ante la jurisdicción del Tribunal de Apelaciones." Véase, *Orden*, entrada núm. 171 en SUMAC.

Insatisfechos, el 1 de abril de 2024, los apelantes interpusieron el presente recurso de apelación y formularon los siguientes señalamientos de error:

**PRIMER ERROR**: Erró el Tribunal de Primera Instancia al declarar ha lugar la *Querella* toda vez que carecía de jurisdicción para entender en la controversia por falta de legitimación activa de los querellantes e interventores apelados para incoar la acción de descalificación al amparo del Artículo 7.5 del Código Electoral de Puerto Rico.

**SEGUNDO ERROR**: Erró el Tribunal de Primera Instancia al interpretar erróneamente el texto del Código Electoral y los reglamentos aplicables, y al realizar un análisis equívoco de la hermenéutica legal, redundando en la presunta obligatoriedad de la presentación de endosos de aspirantes cuyos partidos políticos se acogen a métodos alternos de nominaciones de candidaturas.

**TERCER ERROR**: Erró el Tribunal de Primera Instancia al interpretar que ambos, el Código Electoral de Puerto Rico y el *Reglamento para la Radicación de Candidaturas de los Partidos Políticos y Candidaturas Independientes*, exigen que los candidatos de partidos políticos que se acogen a un método alterno de nominación vienen obligados a presentar peticiones de endosos, dado que dicha interpretación constituye una intromisión excesiva con los derechos fundamentales de libertad de asociación y el voto de los partidos políticos, sus candidatos y sus afiliados.

**CUARTO ERROR**: Erró el Tribunal de Primera Instancia al no otorgar deferencia a las representaciones e interpretaciones de la Comisión Estatal de Elecciones sobre la no necesidad de presentar endosos de aspirantes a candidaturas acogidos a un método alterno de nominación y, en consecuencia, provocar obligatoriamente la sustitución del criterio de la agencia administrativa con *expertise* en materia electoral.

El 2 de abril de 2024, emitimos una *Resolución* mediante la cual le concedimos un término de quince (15) días a las partes apeladas para que presentaran sus alegatos.

En la misma fecha, los apelantes presentaron *Moción en Solicitud de Trámite Expedito en Auxilio de Jurisdicción*. Como consecuencia, emitimos una *Resolución*, en la cual le concedimos veinticuatro (24) horas a los apelados para que se expresaran sobre la moción.

En cumplimiento con lo ordenado, los apelados presentaron su escrito titulado *Moción en Cumplimiento de Orden y Oposición a Solicitud Infundada de Auxilio de Jurisdicción de la Parte Apelante*.

Luego de examinar las mociones presentadas, el 3 de abril de 2024, emitimos una *Resolución* en la cual dispusimos lo siguiente: (1) se designó a la Comisión Estatal de Elecciones de Puerto Rico ("CEE") como amigo del Tribunal; (2) se le concedió hasta el 10 de abril de 2024 para que fueran presentados los respectivos alegatos; y (3) se les indicó que separaran la fecha del 17 de abril de 2024 para la celebración de una vista oral.

Posteriormente, el 9 de abril de 2024 la Unión Americana de Libertades Civiles de Puerto Rico (ACLU PR) presentó una *Solicitud de Intervención como AMICUS CURIAE de la Unión Americana de Libertades Civiles de Puerto Rico*. Evaluada la moción, esta fue aceptada, así pues, le concedimos hasta el 15 de abril de 2024 para que sometiera su alegato.

Por otra parte, en cumplimiento con nuestra orden, el 10 de abril de 2024, la Lcda. Vanessa Santo Domingo Cruz, Comisionada Electoral del PNP; la Dra. Marigdalia Ramírez Fort; los apelados e interventores presentaron, por separado, sus respectivos alegatos.

En la misma fecha, el Lcdo. Nelson Rosario Rodríguez, como Comisionado Electoral de Proyecto Dignidad, presentó un recurso de apelación. Por consiguiente, al estar los recursos relacionados, al solicitar la revisión de una misma *Sentencia*, ordenamos su consolidación. Así pues, le concedimos a las demás partes un término de cinco (5) días para que presentaran sus respectivos alegatos.

El 11 de abril de 2024, emitimos otra *Resolución,* mediante la cual, le concedimos hasta el 18 de abril de 2024, a la CEE para que presentara su escrito. De igual forma, se comunicó que se transfería la vista oral para el 24 de abril de 2024.

En la misma fecha, los apelados presentaron una *Moción Solicitando Desestimación al Amparo del Artículo 13.3 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4843*, en relación a la moción instada por el Lcdo. Rosario. Como consecuencia, emitimos una *Resolución*, concediéndole al Lcdo. Rosario hasta el 15 de abril de 2024 para que se expresara.

En cumplimiento con nuestra orden, el Lcdo. Rosario presentó una *Réplica a "Moción Solicitando Desestimación al Amparo del Artículo 13.3 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4843.* Mientras que, los interventores presentaron *Moción en Cumplimiento de Orden y Consignando Posición de los Interventores.*

De igual forma, la ACLU PR presentó su alegato, como *amicus curiae.*

El 16 de abril de 2024, un grupo de electores del MVC, entre ellos: Aliana Margarita Bigio Alcoba, Pedro José Muñiz García, Ineabelle Colón Rivera, Sonia M.

Palacios de Miranda y Flor Joglar presentaron una *Petición de Comparecencia como Amigos de la Corte*. Sin embargo, esta fue declarada no ha lugar.

A su vez, en la misma fecha, emitimos una *Resolución* mediante la cual detallamos la información necesaria para llevar a cabo la Vista Oral, y los asuntos a discutir.

El 24 de abril de 2024 se llevó a cabo una vista oral donde las partes y los amigos del Tribunal tuvieron la oportunidad de discutir ampliamente las diversas teorías legales de este caso.

Con el beneficio de la comparecencia escrita y la participación de las partes involucradas en los recursos consolidados que nos ocupan y la participación de los amigos del tribunal, procedemos a disponer de las cuestiones planteadas.

## II.

### -A-

La jurisdicción es el poder o autoridad que ostentan los tribunales para considerar y decidir los casos que tienen ante sí. *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.*, 207 DPR 586, 600 (2021). Por ello, los tribunales revisores solo podemos resolver los casos que sean justiciables. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727 (2022); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). En consecuencia, la doctrina de justiciabilidad requiere la existencia de una controversia real para que los tribunales puedan ejercer válidamente el poder judicial. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31 (2009); *Com. de la Mujer*

*v. Srio. de Justicia,* 109 DPR 715 (1980). Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. *Íd.*

Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otros,* 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador,* supra, págs. 68-69.

Como elemento necesario para una adecuada adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de evaluar si los o las demandantes, o quienes insten cualquier tipo de acción judicial, poseen legitimación activa. *Hernández Torres v. Gobernador,* 129 DPR 824 (1992). La legitimación activa ha sido definida como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante." *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Hernández, Santa v. Srio. de Hacienda,* supra, pág. 739.

A su vez, no se considera una controversia justiciable cuando, entre otros asuntos, una de las

partes carece de legitimación activa. *Bhatia Gautier v. Gobernador*, supra; *Noriega v. Hernández Colón*, 135 DPR 406 (1994). Después de todo, la evaluación sobre la legitimación activa es un mecanismo utilizado por los tribunales para delimitar su propia jurisdicción y evitar involucrarse en asuntos que caen bajo la competencia de otras ramas del gobierno, así como para abstenerse de resolver cuestiones hipotéticas o planteadas en un contexto inadecuado. *Hernández Torres v. Hernández Colón et al.,* 131 DPR 593, 598 (1992).

Por ello, el promovente de la causa de acción tiene que demostrar, lo siguiente: (1) que ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge de la Constitución o de alguna ley. *Hernández Santa v. Srio. de Hacienda*, 208 DPR 727, 738-739 (2022); *Fund. Surfrider y otros v. A.R.Pe.,* 178 DPR 563, 572 (2010).

De acuerdo con lo anterior, es a través de esta doctrina que la parte demandante procura demostrarle al tribunal que su interés en el pleito es "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia." *Sánchez et al. v. Srio. de Justicia et al.,* 157 DPR 360 (2002); Hernández Agosto v. Romero Barceló, 112 DPR 407 (1982); *Ramos, Méndez v. García García*, supra, pág. 394. La intervención de los tribunales tendrá lugar sólo si existe una controversia genuina surgida entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. *Suárez Cáceres v.*

*Com. Estatal Elecciones*, 176 DPR 31 (2009), haciendo referencia a *ELA v. Aguayo*, 80 DPR 552 (1958).

-B-

Somos conscientes de que el derecho al voto es una de las garantías fundamentales y emblemáticas de nuestro ordenamiento democrático. Nuestra Constitución dispone que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral."[27]

A su vez, la propia Constitución delega en la Asamblea Legislativa la facultad de "dispon[er] por ley todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas."[28] En virtud de esta delegación constitucional, la Asamblea Legislativa aprobó el Código Electoral de Puerto Rico de 2020 (Código Electoral), Ley Núm. 58-2020, 16 LPRA sec. 4501 *et seq.,* el cual persigue el propósito de mantener la pureza del derecho constitucional al sufragio universal, igual, directo y libre de cada ciudadano, consagrado en el Artículo II, Sec. 2 de la Constitución. Es por ello que, en el Artículo 5.1 del Código Electoral, establecieron los siguientes derechos y prerrogativas de los electores:[29]

> (1) El derecho a la libre emisión del voto y a que este se cuente y se adjudique conforme a la intención del Elector al emitirlo, y según se dispone en esta Ley.

---

[27] Art. II, Sec. 2, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 283.
[28] Art. VI, Sec. 4, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 440.
[29] El Artículo 5.2 establece que un *elector* "es todo ciudadano que haya cumplido con todos los requisitos de inscripción y la actualización de sus datos en el registro General de Electores […]." Art. 5.2 de Código Electoral, 16 LPRA sec. 4562.

(2) La supremacía de los derechos electorales individuales del ciudadano sobre los derechos y las prerrogativas de todos los Partidos, Candidatos Independientes y agrupaciones políticas.

(3) La administración de los organismos electorales de Puerto Rico dentro de un marco de estricta imparcialidad, uniformidad, pureza, transparencia y justicia.

(4) La más amplia accesibilidad del Elector, sin barreras y sin condiciones procesales onerosas, a toda transacción y servicio electoral, incluyendo el ejercicio de su derecho al voto.

(5) El derecho del Elector a que el sistema y los procedimientos electorales estén fundamentados en su más amplia participación y accesibilidad, tomando en consideración su dignidad y su credibilidad personal, y no en la desconfianza de los Partidos Políticos u otros electores.

(6) El derecho a un sistema electoral moderno y tecnológicamente avanzado con opciones que faciliten la realización de las transacciones electorales y el ejercicio del voto a distancia y en tiempo real.

(7) La protección del Elector contra todo acecho u hostigamiento de otro para formular una recusación que pretenda excluirlo del Registro General de Electores y, por ende, privarlo de su derecho al voto.

(8) El derecho del Elector al voto íntegro, al voto mixto, al voto por candidatura y a la nominación directa de personas a cargos públicos electivos bajo condiciones de igualdad en cada caso, conforme se define en esta Ley.

(9) El derecho del Elector a participar y votar hasta resolver de manera final y concluyente el estatus jurídico-político de Puerto Rico.

(10) El derecho del Elector a que, en todo proceso o evento electoral, ordinario o especial, incluyendo los relacionados con la inscripción y las transacciones de electores, información a los electores, campañas de orientación, reglamentación, sistemas tecnológicos, contenidos en las páginas cibernéticas de la Comisión y la impresión de papeletas oficiales y modelos, entre otros, se utilicen ambos idiomas oficiales, español e inglés.

(11) El derecho fundamental del Elector a la libertad de asociación mediante la inscripción de Partidos Políticos, así como el derecho de afiliarse al Partido de su preferencia y a endosar las candidaturas de aspirantes apelantes a cargos electivos por su Partido, conforme se define en esta Ley.

(12) El derecho de los electores afiliados a participar en la formulación de los reglamentos internos y las plataformas programáticas de sus respectivos Partidos Políticos.

(13) El derecho de todo Elector afiliado a disentir respecto a los asuntos bajo la consideración de su Partido Político que no sean de naturaleza programática o reglamentaria.

(14) El derecho de los electores afiliados al debido proceso de la ley en todo procedimiento disciplinario interno, al igual que en los procesos deliberativos y las decisiones de sus Partidos Políticos.

(15) El derecho del Elector afiliado aspirante a una candidatura a solicitar primarias en su Partido Político y la realización de estas conforme a las garantías, los derechos y los procedimientos establecidos en esta Ley.

(16) El derecho del Elector afiliado a solicitar y recibir información en relación con la utilización de los recursos económicos de su Partido Político.

(17) El derecho de todo Elector en trabajo, sea empleado público o de la empresa privada, que deba trabajar el día de una Votación, y no pueda ejercer su derecho al voto fuera del horario de trabajo, a que se le conceda la oportunidad del Voto por correo o en un Centro de Votación adelantada que opere fuera de su horario de trabajo. Cuando al vencimiento de los términos límites establecidos por la Comisión para el trabajador solicitar los mencionados métodos de Votación adelantada este no pueda anticipar el conflicto de su jornada con los horarios de la Votación, el patrono estará obligado a concederle un máximo de dos (2) horas con paga para ir a votar en sus horas laborables.

La Comisión deberá educar al Elector sobre sus derechos y prerrogativas dispuestas en este Artículo.

**Se concede a los electores la legitimación activa para iniciar o promover cualesquiera acciones legales al amparo de este**

**Artículo**, ante el Tribunal de Primera Instancia que corresponda de conformidad con el Capítulo XIII de esta Ley.[30] (Énfasis nuestro)

Ahora bien, con relación a la controversia que nos atañe, el Capítulo VII del Código Electoral establece lo relacionado a las candidaturas y primarias. Sin embargo, debemos iniciar incluyendo las definiciones sobre los siguientes términos:[31]

**(8) "Aspirante" o "Aspirante Primarista"** — Toda aquella persona natural que participe en los procesos de primarias internas o los métodos alternos de nominación de un partido político de Puerto Rico con la intención de, o que realice actividades, recaudaciones o eventos dirigidos a ocupar cualquier cargo interno u obtener una candidatura a cargo público electivo.

[...]

**(11) "Candidato"** — Toda persona natural certificada por la Comisión Estatal de Elecciones o autorizada por esta Ley y las leyes federales para figurar en la papeleta de una Elección General o Elección Especial.

**(12) "Candidato Independiente"** — Toda persona natural que, sin haber sido nominada formalmente por un Partido Político, figure como candidato a un cargo público electivo en la papeleta de votación en una Elección General o Elección Especial, conforme a las disposiciones de esta Ley.

[...]

**(60) "Método Alterno"** — Procedimiento alternativo que sustituye una Primaria o Elección Especial, según lo apruebe el organismo central de un Partido Político para la elección de candidatos a cargos públicos y que cumpla, procesalmente, con las garantías mínimas dispuestas en esta Ley.

El Artículo 7.1 del Código Electoral, dispone que se creará una Comisión de Primarias para cada Partido Político, quienes aprobaran un *Reglamento de Primarias*

---

[30] Art. 5.1 del Código Electoral, 16 LPRA sec. 4561.
[31] Art. 2.3 del Código Electoral, 16 LPRA sec. 4503.

*y Métodos Alternos de Nominación,* el cual será uniforme para todos los Partidos Políticos. No obstante, dicho *Reglamento de Primarias* deberá demostrar deferencia a los reglamentos aprobados por cada partido para sus primarias internas y métodos alternos de nominación, siempre que no menoscaben o vulneren las garantías, reglas y normas protegidas por esta Ley para ambos procesos de nominación.[32]

De otra parte, el Artículo 7.5 del Código Electoral, dispone lo relacionado a la descalificación de Aspirantes y Candidatos:[33]

> Cualquier Aspirante o Candidato nominado podrá ser descalificado como tal, por el Tribunal de Primera Instancia, cuando medie querella porque no cumple con los requisitos impuestos por la Constitución o la ley, o cuando se demostrare que ha violado cualesquiera de las disposiciones de esta Ley o de sus reglamentos.
>
> El Aspirante o Candidato impugnado deberá contestar bajo juramento dicha querella, dentro de los diez (10) días siguientes de haber sido notificada.
>
> Si el Tribunal de Primera Instancia, designado de conformidad con el Capítulo XIII de esta Ley, encontrare que de las alegaciones surge una controversia real, deberá citar a vista a ser realizada dentro de los diez (10) días de haber el querellado presentado su contestación. Dicho término podrá ser reducido por el Tribunal de Primera Instancia, según lo requieran las circunstancias del caso.

El Artículo 7.10 de la Ley 58-2020, dispone que un partido político está obligado a realizar primarias, cuando surja más de un Aspirante calificado.[34] No obstante, el Artículo 7.11 permite que los partidos políticos puedan establecer internamente métodos alternos para nominar candidatos a cargos públicos

---

[32] Art. 7.1 del Código Electoral, 16 LPRA sec. 4611.
[33] Art. 7.5 del Código Electoral, 16 LPRA sec. 4615.
[34] Art. 7.10 del Código Electoral 16 LPRA sec. 4620.

electivos, siempre que así lo apruebe su organismo directivo central y cumplan con las siguientes garantías mínimas:

(a) Que el método de nominación que se establezca garantice la más amplia participación y la expresión del voto directo y secreto de:
i. los miembros y afiliados que formen parte del Registro de Electores Afiliados del Partido y aquellos que se inscriban en el mismo inmediatamente antes de ejercer su voto; o

ii. los delegados de un organismo reglamentario de ese partido previamente seleccionados en proporción con la población electoral de la demarcación geoelectoral correspondiente al cargo público electivo sujeto a nominación; o en proporción con la cantidad de votos obtenidos por el partido político para ese cargo público electivo en la Elección General anterior.

(b) Que el procedimiento para el método alterno de nominación haya sido formalmente aprobado por el organismo directivo central del Partido Político, no menos de sesenta (60) días antes de la realización de la votación; y que esté por escrito y disponible para todos los miembros de ese Partido Político. Este procedimiento, además, deberá ser ampliamente divulgado por el partido y entregado a los Aspirantes y potenciales Aspirantes de los que se tenga conocimiento. Las reglas que han de regir el proceso incluirán los lugares, fechas y horas donde se han de realizar los mismos.

(c) Que todo Aspirante tenga acceso, con no menos de sesenta (60) días de anticipación a la realización de la votación, a la lista de electores, afiliados o delegados, según corresponda, incluyendo los datos de contacto que tenga el partido de cada uno de estos, como por ejemplo, direcciones, teléfonos y correos electrónicos, entre otros.

(d) Que a los Aspirantes se les provea un foro adecuado para impugnar las reglas del procedimiento aprobado por el organismo directivo central del Partido y el contenido de la lista descrita en el apartado (c) de este Artículo.

(e) Que todos los Aspirantes tengan derecho a representación efectiva y proporcional en las etapas críticas del proceso de nominación, tales como la elección de

delegados, el registro de los participantes y el proceso de votación y de escrutinio.

(f) Que las posiciones en que ha de figurar el nombre de cada Aspirante en la papeleta de votación sean seleccionadas mediante sorteo, en presencia de los Aspirantes o sus representantes.

(g) Que se garantice el derecho a recusar a los participantes por las razones que se disponen en esta Ley y las que se dispongan en el reglamento de su partido político.

(h) Que haya igual acceso y protección a los participantes en todas las etapas del proceso de nominación.

(i) Que la votación sea libre y secreta.

(j) Que haya mecanismos internos eficaces para impugnar la violación de estas normas y agotado ese foro, el derecho de recurrir en apelación al Tribunal de Primera Instancia, designado de conformidad con el Capítulo XIII de esta Ley, y dentro de los cinco (5) días laborables siguientes a la determinación final del Partido Político.[35]

A su vez, dispone que "[n]ingún proceso o método alterno de nominación de candidatos a cargos públicos electivos impedirá que otro miembro o afiliado del Partido que no participó como Aspirante, pueda reclamar su derecho a primarias para ese mismo cargo público electivo dentro de los términos de esta Ley y el reglamento de primarias del partido."

En lo relativo a las peticiones de endosos a Aspirantes Primaristas y Candidatos Independientes, el Artículo 7.15 del Código Electoral, dispone que, la Comisión de Primarias reglamentará lo relacionado con las peticiones de endosos.[36] En lo pertinente, establece que "[e]l período para la presentación de peticiones de endosos para Aspirantes Primaristas y Candidatos Independientes a cargos públicos electivos comenzará a

---

[35] Art. 7.11 del Código Electoral, 16 LPRA sec. 4621.
[36] Art. 7.15 del Código Electoral, 16 LPRA sec. 4625.

partir del 1ro. de diciembre del año anterior al de Elecciones Generales y concluirá al mediodía (12:00 p.m.) del 15 de febrero del año de Elecciones Generales." A su vez, determina que cualquier "Elector" que desea concursar en unas primarias, sea como aspirante o como candidato independiente, deberá presentar ante la Comisión de Primarias la cantidad de peticiones de endosos requerida por la Ley para el cargo público electivo al que interese aspirar, además de cumplir con los reglamentos de su Partido y la Comisión.

El Capítulo XIII, invoca lo relacionado a las revisiones judiciales. En particular, el Artículo 13.1(A) expone lo siguiente, en cuanto a las revisiones judiciales de las decisiones de la Comisión:

> (1) Legitimación activa de los Comisionados Electorales
> (a) Los Comisionados Electorales tendrán legitimación activa a nivel judicial para intervenir en cualquier asunto con "naturaleza específicamente electoral" que esté o haya estado bajo la jurisdicción de la Comisión; excepto cuando la controversia se trate de asuntos con naturaleza específicamente administrativa interna de la Comisión; las primarias y los asuntos internos de partidos distintos a la afiliación del Comisionado. En estos casos, la legitimación activa solo se reconocerá a los Comisionados Electorales de los partidos políticos o nacionales cuyos procesos primaristas o asuntos internos son objeto de controversia judicial.

(b) Tampoco tendrán legitimación activa a nivel judicial cuando el partido representado por el Comisionado no se haya certificado o registrado para participar electoralmente en la votación que sea objeto de algún proceso judicial.

El 15 de junio de 2023, la CEE aprobó el *Reglamento para la Radicación de Candidaturas de los Partidos Políticos y Candidaturas Independientes*, al amparo del

Artículo 3.2(3) del Código Electoral. En el Título III del Reglamento de Radicación establece que:

> Los partidos políticos podrán establecer, internamente, métodos alternos de selección para la nominación de sus candidato(a)s siempre que así lo apruebe su organismo directivo central. Para esto, deberán aprobar un reglamento que no menoscabe o vulneren las garantías, reglas y normas protegidas en la Ley Núm. 58 - 2020 y provea como garantías mínimas las dispuestas en el Artículo 7.11 del Código Electoral de Puerto Rico de 2020.

> Por su parte, la Comisión deberá aprobar un Reglamento de Primarias y Métodos Alternos de Nominación uniforme para todos los Partidos Políticos, mostrando deferencia a los reglamentos aprobados por cada Partido.

> Las personas seleccionadas mediante un Método Alterno de Nominación no tendrán que cumplir con los requisitos de presentación de peticiones de endoso para primarias para calificar como candidato(a); siempre y cuando sean escogidos y su expediente, con los documentos requeridos, sea radicado por su Partido Político como candidato único en la Comisión en o antes de las 12:00 (doce en punto) del medio día del 30 de diciembre de 2023.

Cabe mencionar que, dicho Reglamento de Candidaturas, no fue aprobado unánimemente, sólo obtuvo la firma de la Lcda. Vanessa Santo Domingo Cruz Comisionada Electoral del Partido nuevo Progresista, por lo tanto, el Presidente de la CEE lo aprobó mediante la *Resolución* CEE-RS-23-012.

Por otra parte, el 24 de agosto de 2024, fue aprobado el *Reglamento y Manual de Primarias y Métodos Alternos de Nominación 2024*, al amparo del Artículo 3.2(3) y el Capítulo VI del Código Electoral. De igual forma, la Sección 1.3 del *Reglamento y Manual*, establece que debe "ser uniforme para todos los Partidos Políticos en los campos electorales ocupados por el Código Electoral; mostrando deferencia por los Reglamentos

aprobados por cada Partido para sus Primarias y Métodos Alternos de Nominación, siempre que los mismos no conflijan con las disposiciones establecidas por el Código Electoral para ambos procesos de nominación." Dicho *Reglamento y Manual*, fue aprobado por todos los comisionados electorales y la Presidenta Interina de la CEE.

### III.

### -A-

Sabido es que los asuntos de falta de jurisdicción deben atenderse con prioridad. Es por ello que, previo a expresarnos en cuanto a los méritos del recurso KLAN202400304- nos es forzoso atender el recurso de apelación KLAN202400359, presentado el 10 de abril de 2024, por el Lcdo. Nelson Rosario, como Comisionado Electoral de Proyecto Dignidad.

Hemos estudiado el Código Electoral, así como aquellas reglas relativas a las mociones de reconsideración y la jurisprudencia interpretativa de la misma. Completada esta tarea, nos es forzoso concluir que procede la desestimación del recurso por falta de jurisdicción, por tardío. La *Sentencia* apelada fue emitida y notificada el 21 de marzo de 2024. El Código Electoral no reconoce la presentación de mociones de reconsideración frente a las sentencias que emita el Tribunal de Primera Instancia con relación a controversias nacidas de este. Esto, a diferencia de aquellas sentencias que este Tribunal de Apelaciones pueda emitir en su día, sobre las que sí podrá someterse una solicitud de reconsideración dentro del término allí establecido.

De igual forma, notamos que los términos establecidos por el Código Electoral son cortos e inconsistente con aquellos que establece la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V R. 47, sobre la reconsideración. Todo esto nos lleva a concluir que el Código Electoral no reconoce el derecho a presentarse una reconsideración de la decisión que alcanza el Tribunal de Primera Instancia. Por consiguiente, conforme dispone el Artículo 13.3 del Código Electoral[37], el Lcdo. Rosario tenía un término de diez (10) días siguientes a la notificación de la decisión del foro de instancia para presentar un recurso ante este Tribunal. Habiendo comparecido luego de expirad dicho plazo, procede desestimar el recurso presentado por el Lcdo. Rosario.

## -B-

Atendemos ahora el recurso KLAN202400304 en el que los apelantes[38] sometieron cuatro (4) señalamientos de error. En el primero de estos, argumentan que se equivocó el TPI al reconocerle legitimación activa a uno de los querellantes y a los interventores, para incoar la acción de descalificación al amparo del Artículo 7.5 del Código Electoral de Puerto Rico. En cuanto a ello, señalan que en nuestro ordenamiento jurídico, en ausencia de una autorización estatutaria expresa que otorgue legitimación activa, quien comparezca como parte demandante en un pleito está obligado a demostrar: 1) la existencia de un daño claro y palpable; que el daño sufrido es real, inmediato y preciso, no abstracto o

---

[37] Artículo 13.3 del Código Electoral, 16 LPRA sec. 4843.
[38] Los "Apelantes" son: Lillian Aponte Dones, Hon. Mariana Nogales Molinelli, Gladys Myrna Conty Hernández, Luis Alejandro Santiago Calderón, Hon. Ana Irma Rivera Lassén, Hon. Rafael Bernabé Riefkohl, Lcdo. Olvin A. Valentín Rivera y Movimiento Victoria Ciudadana.

hipotético; 3)la existencia de una conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge al palio de la Constitución o de una ley. Proceden entonces a argumentar que los apelados incumplieron la exigencia de demostrar la existencia de un daño claro y palpable, pues "[e]l tener un contrincante en la papeleta electoral no es un daño."

A su vez, los apelantes añaden que la descalificación de los candidatos de MVC y PD, no resultó en el reconocimiento de derecho alguno a los apelados e interventores. Finalmente, esbozan que la Ley no faculta a ninguna Rama del Gobierno a que puedan descalificar a un aspirante de un puesto federal, como el de la Comisionada Residente. Por lo tanto, plantean que en ausencia de una delegación expresa por parte del Congreso, cualquier descalificación sería nula.

En cambio, respecto a estos argumentos, los apelados alegan que su demanda fue presentada como electores que aspiran a diferentes puestos electivos. Por lo tanto, sostienen que poseen legitimación activa al amparo del Artículo 5.1 del Código Electoral. A su vez, afirman que han sufrido un daño al procurar un trato diferente en la aplicación del Código Electoral, provocando un "virus inmortal al modelo de democracia" escogido. En cuanto al puesto de Comisionado Electoral, arguyen que el único límite establecido es que no se pueden imponer requisitos electorales irracionales o que atenten contra los derechos protegidos en la Constitución de los Estados Unidos.

Por su parte, los interventores reiteran que el daño sufrido es la aplicación desigual de una reglamentación electoral. Como parte de su

argumentación, sostienen que dicho acto ocasiona que, a los apelantes y demás aspirantes, se les permita tener acceso a una papeleta sin cumplir con los requisitos dispuestos en ley y su reglamentación, cuando el resto de los candidatos cumplió. Asimismo, alegan que incurrieron en gastos de recursos económicos y humanos para poder cumplir con la cantidad de endosos. Por consiguiente, expresan que tienen legitimación activa para presentar la causa de acción de epígrafe.

En cuanto al puesto de Comisionada Residente, la Dra. Marigdalia Ramírez Fort esboza que sufrió un daño claro, al ser descalificada por la falta de recogido de endosos. Añade que el daño es claro y palpable, al aplicarse desigualmente la reglamentación electoral, puesto que, al no cumplir con los endosos quedó descalificada.

Según reseñamos previamente en esta *Sentencia,* los tribunales solo podremos resolver los casos que sean justiciables.[39] Asimismo, y tal cual ya mencionado, una controversia no es justiciable cuando una de las partes carece de legitimación activa.[40] La polémica que está ante nuestra consideración no requiere que entremos a evaluar la disposición legal que los apelados arguyeron ante el foro recurrido, les concedía legitimación activa estatutaria. Ello así, toda vez que **el foro primario rechazó expresamente los argumentos de los apelados en cuanto a que su legitimación activa nacía del Artículo 5.1 del Código Electoral,** el cual reconoce una acción estatutaria para cualquier elector que entienda que se

---

[39] *Hernández, Santa v. Srio. de Hacienda,* supra, pág. 738; *Bhatia Gautier v. Gobernador,* supra, pág. 68.
[40] *Asphalt v. AFI y otros,* supra, pág. 815; *Bhatia Gautier v. Gobernador,* supra, págs. 68-69.

han violentado las disposiciones de dicho artículo. De igual forma, el foro recurrido expresó que el Artículo 7.5 del Código Electoral no establece quiénes son las personas que pueden presentar una querella. Por lo tanto, la controversia planteada en el caso nos invita a evaluar si la determinación de existencia de un daño claro efectuada por el Tribunal de Primera Instancia en favor del Sr. Jorge Quiles Gordillo y de los interventores fue correcta.[41]

Un estudio minucioso de los escritos sometidos por las partes y una consideración de las distintas ponencias de las partes durante la audiencia oral celebrada el pasado 24 de abril de 2024, por este Tribunal de Apelaciones, nos mueven a responder en la negativa. En contrario, y tal cual los apelantes reclaman, procedía la desestimación del recurso por falta de legitimación activa ante la inexistencia de un daño real y palpable que les permitiera a los apelados e interventores instar el pleito de epígrafe. Veamos.

Sabido es que, para establecer legitimación activa, el promovente deberá demostrar: (1) que ha sufrido un daño claro y palpable; (2) que tal daño es real, inmediato y preciso, no abstracto o hipotético; (3) la existencia de una relación causal razonable entre el daño alegado y la acción ejercitada, y (4) que la causa

---

[41] Asimismo, de un estudio del Código Electoral concluimos que el estatuto no contempla una legitimación activa estatutaria en favor de los apelados e interventores, pues más allá del Artículo 5.1 del Código Electoral, el único otro artículo que reconoce legitimidad activa estatutaria para cuestionar asuntos de "naturaleza específicamente electoral", como el presente caso, es el Artículo 13.1 del Código Electoral, que contempla legitimación activa solamente a los Comisionados Electorales, pero para las primarias del partido que representen. Por lo tanto, inferimos que el Código Electoral rechaza la legitimación activa de los partidos políticos, sus representantes o alter egos en los procesos internos o primaristas de los demás partidos.

de acción surge al palio de la Constitución o de alguna ley.[42]

Al defender su legitimación activa, y por consiguiente la decisión apelada, los apelados e interventores alegan que sufrieron un daño y que este fue el trato desigual en la aplicación de la ley y los reglamentos. Específicamente, que estos tuvieron que cumplir con el recogido de endosos exigido por el Código Electoral y los reglamentos aplicables mientras que, a los apelantes, pese a no cumplir con tales disposiciones, se les permitirá participar en la misma papeleta. Es bajo este reclamo que afirman que su daño es uno claro y palpable y que debe confirmarse la *Sentencia*. No tienen razón.

Al resolver la legitimación activa en favor de los apelados e interventores, **el foro primario manifestó que entendía que el daño era claro y, "que la causa del daño es el trato desigual, sin razón establecida en la ley, a personas que se enfrentarán en una contienda electoral."**. En cuanto a la aspirante Marigdalia Ramírez Fort, reconoció un daño mayor, pues esta no pudo presentar las peticiones de endoso que se le requieren por ley y no podrá participar en la contienda. **El liviano análisis efectuado por el tribunal a los fines de determinar el daño, descansa en una premisa que no es certera. Esto, pues al momento en que el señor Jorge Quiles Gordillo y demás apelados instaron la causa de acción, se desconocía certeramente si los apelados en el caso estarían participando como contrincantes candidatos**

---

[42] *Sánchez et al. v. Srio. de Justicia et al.*, supra, pág. 371; *Bhatia Gautier v. Gobernador*, supra, pág. 69; *Ramos, Méndez v. García García*, supra, págs. 394-395; *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 739.

**en las elecciones generales, toda vez que van a participar de un evento primarista.** Al momento en que fue instada la acción, los procedimientos relativos a la primaria, según deben ser atendidos por la agencia encargada de este y todos los procesos electorales, no habían concluido. **Por consiguiente, el tribunal tenía ante sí una reclamación en la que el daño alegado por los apelados a los fines de establecer su legitimación activa se trataba realmente de uno hipotético.** (Énfasis nuestro)

Según más arriba reseñamos, con relación a la controversia que hoy atendemos, este Tribunal de Apelaciones citó y celebró una vista oral el 24 de abril de 2024. Durante la misma, los apelantes, los apelados, los interventores, y la ACLU y CEE como amigos de la corte, tuvieron la oportunidad de exponer planteamientos adicionales a los sometidos ya por escrito sobre la legitimación activa de los apelados.

Durante el turno de preguntas, ante el panel de jueces se llamó a responder, entre otros, al representante de la CEE. En tal ocasión, el panel hizo referencia a mociones sometidas por los apelados ante el foro primario, según constaba del apéndice del recurso. Conforme se explicó por miembros del panel, allí los apelados establecían que el presente caso se trata de un reclamo, **"ante la alegada inobservancia por parte de la CEE de descualificar a los apelados"**. Luego, para fines ilustrativos, se le preguntó por qué la Comisión no actuó sobre los apelados, si es que en efecto estos no cumplieron con los requisitos establecidos por el Código Electoral y sus reglamentos, específicamente, la presentación de endosos. (Énfasis nuestro)

En respuesta a la interrogante levantada, **la CEE como amigo de la corte, destacó en primer lugar que los candidatos, aquí apelantes, no han sido certificados finalmente y que los procedimientos continúan corriendo ante la Comisión. Añadió, entonces, que este asunto, es de aquellos que se plantearía normalmente por los comisionados electorales ante la Comisión, dándosele ahí curso según las disposiciones del Código.** En adición, expresó que, sobre el asunto podría haber acuerdo o desacuerdo y de esa determinación la parte perjudicada podría entonces recurrir a la rama judicial en revisión judicial; lo que no ha ocurrido en el caso. Es debido a ello, que el representante de la Comisión expresó que la CEE no tiene una posición específica que presentar. (Énfasis nuestro)

Ante estas expresiones, acto seguido el panel indagó, si debía entenderse a pregunta de uno de sus integrantes, si la controversia planteada no estaba madura para la atención de la Comisión. A esto, respondió en la afirmativa, añadiendo inclusive que no estaba madura, porque no había sido dilucidada ni adjudicada. A modo de siguiente pregunta, el panel inquirió si, contrario a lo que ocurrió, los apelados no hubieran presentado la Querella y traído la controversia ante los tribunales, la Comisión hubiera continuado con el proceso explicado por él. En esa ocasión, contestó nuevamente en la afirmativa, indicándosele al Tribunal de Apelaciones que los procedimientos corren su curso normal. El panel de jueces, en esa misma línea de preguntas, cuestionó, si para el tribunal hubiera estado igualmente madura o no. A lo que la CEE expresó que, "solamente hubiera estado madura cuando se planteara

ante el seno de la Comisión, se discutiera de haber un desacuerdo y la presidenta decidir un curso de acción la parte afectada tiene 10 días para acudir a la rama judicial para que revise."

**Aunque reconocemos que la información desvelada por la CEE durante su comparecencia a la vista oral como amigo de la corte, surge una vez este Tribunal de Apelaciones celebró tal audiencia, las disposiciones legales del Código Electoral y los reglamentos aplicables al ser evaluadas en conjunto, advertían la naturaleza hipotética del daño alegado por los apelados e interventores.** (Énfasis nuestro)

El Código Electoral establece que la CEE y los Partidos Políticos abrirán el proceso de presentación de candidaturas el día 1ro y hasta 30 de diciembre del año anterior al que deba realizarse la próxima Elección General. De igual forma, dispone que las demás fechas límites que aplicarán a los procesos y las actividades relacionadas con las primarias, serán reglamentadas por la Comisión.[43] Esta disposición claramente advierte que el proceso en preparación a las primarias no concluye a la fecha del 30 de diciembre. Por el contrario, alerta sobre procesos adicionales relacionados a la primaria que son reglamentados y atendidos por la CEE **y que al momento en que los apelados instaron la Querella no habían concluido. Es claro pues, que los apelados e interventores a los que el foro recurrido le reconoció legitimación activa, fundamentaron su reclamo en un daño puramente imaginativo e hipotético que descansa en supuestos sobre la contienda electoral que al momento en**

---

[43] Artículo 7.14 del Código Electoral, 16 LPRA sec. 4624.

que instaron la acción no eran certeros. **Peor aún y como ya habíamos mencionado, se desconoce si en efecto los aquí apelados vayan a formar parte de la papeleta electoral de las Elecciones Generales, toda vez que estarán participando de un evento interno primarista dentro de sus respectivos partidos políticos.** En el caso de la interventora, Dra. Marigdalia Ramírez Fort, ya se conoce con certeza que no será parte de los candidatos a participar en la elección general, por lo cual no hay daño que reparar. (Énfasis nuestro)

Algunos de los apelados nos invitan a acoger la aplicación de la legitimación flexible citada, discutida y aplicada en la *Sentencia* que un panel hermano emitiera el 30 de agosto de 2023, en el caso *Movimiento Victoria Ciudadana, et als. v. ELA, et als.*, KLAN202300554. Sin embargo, no estamos convencidos de que la aplicación solicitada proceda. Más allá de que es harto conocido que las decisiones de este Tribunal de Apelaciones no son vinculantes y en todo caso pueden ser citadas solamente con carácter persuasivo, no podemos pasar por alto que tanto, el antes citado caso, como la decisión del Tribunal Supremo Federal, en cuya interpretación se basó la resolución de este, tratan de acciones instadas contra el ESTADO. En estas, se alegaron daños a consecuencia de las acciones del ESTADO en la aprobación de leyes y reglamentos que inciden en derechos constitucionales. El caso de epígrafe trata de una acción presentada por un grupo de individuos contra otros. Con certeza, las circunstancias claramente distinguibles entre aquellas y las de auto, requieren un análisis cuidadoso sobre la legitimación activa que evite la aplicación indiscriminada de decisiones, sin

considerar las razones que condujeron al resultado alcanzado.

Por todo lo hasta aquí expuesto, habiéndose resuelto que el daño por el cual el foro primario le reconoció legitimación activa a uno de los querellantes e interventores es uno hipotético, resolvemos que estos no cumplieron con el requisito de haber sufrido un daño claro y palpable que les concediera legitimación activa para instar el pleito de epígrafe. Procede entonces revocar la *Sentencia* apelada, por falta de legitimación activa.

**V.**

Por los fundamentos antes expuestos, se **DESESTIMA** el recurso KLAN202400359 por falta de jurisdicción, ante su presentación tardía. Además, y en cuanto al recurso KLAN202400304, se **REVOCA** la *Sentencia* apelada.

El Juez Figueroa Cabán emite voto **CONFORME** en cuanto el caso KLAN202400359, sin embargo, emite voto **DISIDENTE** con opinión escrita en el caso KLAN202400304.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III-ESPECIAL

| | | |
|---|---|---|
| HON. JORGE ALFREDO RIVERA SEGARRA REPRESENTANTE DISTRITO 22; HON. HÉCTOR SANTIAGO TORRES SENADOR DISTRITO DE GUAYAMA; LCDA. YULÍXA PAREDES ALBARRÁN ASPIRANTE A REPRESENTANTE DISTRITO 13; Y JORGE QUILES GORDILLO ASPIRANTE A REPRESENTANTE POR ACUMULACIÓN<br><br>Apelados<br><br>v.<br><br>HON. ANA IRMA RIVERA LASSEN ASPIRANTE COMISIONADA RESIDENTE MVC; EDGARDO CRUZ VÉLEZ ASPIRANTE COMISIONADO RESIDENTE MVC; ALEJANDRO SANTIAGO CALDERÓN ASPIRANTE SENADOR POR ACUMULACIÓN MVC; RAMÓN CRUZ DÍAZ ASPIRANTE SENADO POR ACUMULACIÓN MVC; EDWIN MARRERO MARTÍNEZ ASPIRANTE SENADO POR ACUMULACIÓN MVC; HON. RAFAEL BERNABE RIEFKOHL ASPIRANTE SENADOR POR ACUMULACIÓN MVC; HON. MARIANA NOGALES MOLINELLI ASPIRANTE REPRESENTANTE POR ACUMULACIÓN MVC; LCDO. OLVIN VALENTÍN RIVERA ASPIRANTE REPRESENTANTE POR ACUMULACIÓN MVC; GLADYS MYRNA CONTY HERNÁNDEZ ASPIRANTE REPRESENTANTE POR ACUMULACIÓN MVC; ANTHONY SÁNCHEZ APONTE ASPIRANTE A REPRESENTANTE POR DISTRITO 38 PD: | KLAN202400304 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2024CV01020<br><br>Sobre: Descalificación de aspirante y candidatos (Art. 7.5, Ley 58-2020) |

Número Identificador
SEN2024_____

|  |  |  |
| --- | --- | --- |
| STHEPHEN GIL ALAMO ASPIRANTE A REPRESENTANTE POR DISTRITO 38 PD; WILFREDO PÉREZ TORRES ASPIRANTE A REPRESENTANTE POR DISTRITO 38 PD; HON. JESSIKA PADILLA RIVERA PRESIDENTA INTERINA CEE; LCDA. LILLIAM APONTE DONES COMISIONADA MOVIMIENTO VICTORIA CIUDADANA; LCDA. VANESSA SANTO DOMINGO CRUZ COMISIONADA PARTIDO NUEVO PROGRESISTA; LCDA. KARLA ANGLERÓ COMISIONADA PARTIDO POPULAR DEMOCRÁTICO; ROBERTO IVÁN APONTE COMISIONADO PARTIDO INDEPENDENTISTA PUERTORRIQUEÑO; LCDO. NELSON ROSARIO COMISIONADO PROYECTO DIGNIDAD; Y PARTIDO MOVIMIENTO VICTORIA CIUDADANA<br><br>Apelantes<br><br>JOSÉ "PICHY" TORRES ZAMORA; KEREN RIQUELME CABRERA; LEYDA CRUZ BERRÍOS; Y MARIGDALIA RAMÍREZ FORT<br><br>Interventores |  |  |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**OPINIÓN DISIDENTE**

En San Juan, Puerto Rico a    de abril de 2024.

> Examinadlo todo; retened lo bueno.
> Primera Tesalonicenses, 5:21.[1]

Estamos ante un caso complejo. Uno de esos que en el ámbito judicial y académico se catalogan como "hard

---

[1] *La Santa Biblia*, Kissimmee, Ed. Publicaciones Españolas, 1960, 1227.

cases".[2] En estos, las normas escritas se pueden interpretar de varias maneras[3] y el juzgador tendrá que rebasar el ámbito del derecho positivo y buscar, más allá de este, los valores jurídicos fundamentales que promueven tanto el ordenamiento jurídico en general, como el cuerpo normativo en controversia, en particular.[4] De este modo, se trata de buscar una interpretación coherente de la estructura política y la doctrina jurídica vigente.[5] Bajo ese supuesto, el análisis no se puede limitar a una lectura aislada de una norma jurídica. Por el contrario, hay que apelar a una interpretación holística, lo cual requiere: "un esfuerzo razonable por armonizar las normas y evitar contradicciones o tensiones, salvo que resulte claro que, en efecto, las normas son incompatibles".[6]

---

[2] R. Dworkin, "Taking Rights Seriously", *Introduction to Jurisprudence*, Swiss Cottage, Ed. Sweet and Maxwell, 1999, 1309. "But if the case at hand is a hard case, when no settled rule dictates a decision either way, then it might seem that a proper decision could be generated by either policy or principle."

[3] H.L.A. Hart, "Problems of the Philosophy of Law", *Introduction to Jurisprudence*, Swiss Cottage, Ed. Sweet and Maxwell, 1999, 1306: "When the various issues identified above are distinguished, two sets of questions emerge. The first of these concerns the decisions of courts in 'clear' cases where no doubts are felt about the meaning and applicability of a single legal rule, and the second concerns decisions where the indeterminacy of the relevant legal rules and precedents is acknowledged".

[4] H.L.A. Hart, *supra*, pág. 1307: "It is of crucial importance that cases for decision do not arise in a vacuum but in the course of the operation of a working body of rules, an operation in which a multiplicity of diverse considerations are continuously recognized as good reasons for a decision. These include a wide variety of individual and social interests, social and political aims, and standards of morality and justice; and they may be formulated in general terms as principles, policies, and standards. In some cases [,] only one such consideration may be relevant, and it may determine a decision as unambiguously as a determinate legal rule. But in many cases this is not so, and judges marshal in support of their decisions a plurality of such considerations which they regard as jointly sufficient to support their decisions, although each separately would not be. Frequently these considerations conflict, and courts are forced to balance or weigh them and to determine priorities among them."

[5] R. Dworkin, "Law as Interpretation", *Introduction to Jurisprudence*, Swiss Cottage, Ed. Sweet and Maxwell, 1999, 1340: "Judges who accept the interpretive ideal of integrity decide hard cases by trying to find, in some coherent set of principles about people's rights and duties, the best constructive interpretation of the political structure and legal doctrine of their community."

[6] J.M. Farinacci Fernós, *Hermenéutica Puertorriqueña*, San Juan, Ed. InterJuris, 2019, 42. Véase, además, *Danosa Caribbean v. Neg. Asist. Contr.*, 185 DPR 1008 (2012).

Para comenzar, coincidimos con el relato del tracto procesal del caso de epígrafe, expuesto en la opinión mayoritaria. Además, a nuestro entender, no hay hechos en controversia, por lo cual corresponde determinar si el foro recurrido aplicó el derecho correctamente.[7] Entendemos que sí. Veamos.

Un análisis integrado de los artículos 5.1(15),[8] 7.10(1) y (2),[9] 7.11(4)[10] y 7.15(3)[11] del Código Electoral 2020, y de la interpretación oficial de la sección 3.1 del Reglamento de Radicación de Candidaturas de los Candidatos de Partidos Políticos y Candidatos Independientes de 15 de junio de 2023,[12] en adelante Reglamento de Radicación de Candidaturas,

---

[7] *Meléndez González v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

[8] Art. 5.1 (15) de la Ley Núm. 58-2020 (16 LPRA sec. 4561): "El derecho del Elector afiliado aspirante a una candidatura a solicitar primarias en su Partido Político y la realización de estas conforme a las garantías, los derechos y los procedimientos establecidos en esta Ley".

[9] Art. 7.10 (1) y (2) de la Ley Núm. 58-2020 (16 LPRA sec. 4620): "(1) Todo Elector afiliado y miembro de un partido político tendrá derecho a que se le considere por el organismo directivo para ser nominado como Aspirante en primaria a cualquier cargo público electivo, siempre que sea un Aspirante calificado porque cumple con los requisitos de esta Ley, sus reglamentos y los reglamentos del partido. (2) Todo partido político tendrá la obligación de realizar primarias en aquellos casos donde surja más de un Aspirante calificado".

[10] Art. 7.11 (4) de la Ley Núm. 58-2020 (16 LPRA sec. 4621): "Ningún proceso o método alterno de nominación de candidatos a cargos públicos electivos impedirá que otro miembro o afiliado del Partido que no participó como Aspirante, pueda reclamar su derecho a primarias para ese mismo cargo público electivo dentro de los términos de esta Ley y el reglamento de primarias del partido".

[11] Art. 7.15(3) de la Ley Núm. 58-2020 (16 LPRA sec. 4625): "Cualquier Elector que desee concursar en unas primarias, como aspirante o como candidato independiente, además de cumplir con los requisitos de esta Ley y los reglamentos de su Partido y la Comisión, deberá presentar ante la Comisión la cantidad de peticiones de endoso requerida por esta Ley para el cargo público electivo al que interese aspirar".

[12] Reglamento de Radicación de Candidaturas de los Candidatos de Partidos Políticos y Candidatos Independientes de 15 de junio de 2023, sec. 3.1, pág. 17. **Además, la CEE interpretó que: "las personas seleccionadas, mediante un Método Alterno de Nominación, no tendrán que cumplir con los requisitos de presentación de peticiones de endoso para primarias para calificar como candidato(a); siempre y cuando sean escogidos y su expediente, con los documentos requeridos, sea radicado por su Partido Político, como candidato único en la Comisión, en o antes de las 12:00 (doce en punto) del medio día del 30 de diciembre de 2023; constituye, a todas luces, una interpretación oficial que de las disposiciones de su Ley orgánica efectuara la CEE". Por otro lado, debemos añadir que "al revisar las decisiones de las agencias, los tribunales brindan mucha deferencia y respeto a las interpretaciones del estatuto que sean efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento…"** *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 436 (1997).

revela que la regla general es que cualquier persona que desee participar en unas primarias tiene que presentar endosos, ello independiente del método alterno que utilice su partido. Sin embargo, estará exenta de dicho requisito, si el partido realizó el método alterno antes del 30 de diciembre de 2023 y se presentó a la persona como candidata única. Esta es una interpretación razonable de la normativa electoral previamente expuesta, que merece deferencia del suscribiente.[13]

Contrario a ese marco normativo se presentan, por lo menos, las siguientes anomalías: (1) un partido político que no perfeccionó su método de selección alterna antes de 30 de diciembre de 2023, solicita presentar varios candidatos a posiciones electivas sin haber obtenido endosos y (2) una candidata a comisionada residente, que no obtuvo endosos, reclama participar en el proceso eleccionario mientras otra candidata al mismo puesto fue descalificada, precisamente, por no haber obtenido los endosos requeridos por ley.

¿Deben los tribunales limitar su acceso a la consideración de estas controversias, de modo que no atiendan estas contradicciones? Ante una controversia electoral de alto interés público: ¿debe prevalecer una aplicación rígida e inflexible de la norma, elástica de por sí, de legitimación activa? Entendemos que no.

---

[13] 32 LPRA Ap. VI, R. 201. Véase, además, https://www.facebook.com/JugandoPelotaPR/videos/jugando-pelota-dura-03-11-2024/958804075643023 (47:18 y 50:40). Esta interpretación de la normativa electoral aplicable es cónsona con las declaraciones del licenciado Francisco Rosado Colomer, expresidente de la Comisión Estatal de Elecciones, que ante el impase de los partidos políticos en aprobar el Reglamento de Radicación de Candidaturas, determinó la posición oficial de dicho órgano administrativo.

En nuestra opinión, la legitimación activa, en el presente caso, es de naturaleza estatutaria. Basta examinar el artículo 5.1 del Código Electoral, que dispone claramente: **"Se concede a los electores la legitimación activa para iniciar o promover cualesquiera acciones legales al amparo de este Artículo, ante el Tribunal de Primera Instancia que corresponda de conformidad con el Capítulo XIII de esta Ley".**[14] Conviene mencionar que el reconocimiento de la legitimación activa estatutaria de los electores no es ajena a nuestro ordenamiento jurídico.[15]

Como si lo anterior fuera poco, las reglas de legitimación activa, en materia electoral, se han ido flexibilizando a favor del elector. De modo, que bastará al elector establecer que existe una amenaza real creíble ("credible threat") sobre sus derechos electorales para solicitar un remedio ante el tribunal correspondiente.[16] Como cuestión de hecho, este estándar de legitimación activa, promovido por los apelantes[17], fue acogido por un panel hermano en el KLAN202300554.[18]

A nuestro entender, la normativa previamente discutida es suficiente para reconocer legitimación activa, tanto a los querellantes como a los interventores.

Ahora bien, si todavía hubiese dudas sobre el acceso de las controversias planteadas ante un tribunal de justicia, bastaría recordar la normativa de *Fuster*

---

[14] 16 LPRA sec. 4561. (Énfasis suplido).

[15] *Com. PNP v. CEE III*, 196 DPR 706, 796 (2016).

[16] 600 US ___ (2023); 143 S.Ct. 2298.

[17] Conviene recordar que "La conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida." *International General Electric v. Concrete Builders*, 104 DPR 871, 877 (1976).

[18] "No albergamos duda alguna de que el relajamiento de la doctrina de legitimación activa por parte del Tribunal Supremo federal en el citado caso de *303 Creative LLC*, nos obliga a reconocerle al MVC-PIP y otros, legitimación activa y, así, abrir las puertas del tribunal para atender su reclamo en los méritos".

*v. Busó* a los efectos de que: **"debido al interés público del asunto y a que están envueltas en él varias disposiciones constitucionales, una disposición de la Ley Electoral y una actuación de la Junta Estatal de Elecciones, hemos decidido entrar en los méritos".**[19]

Corresponde, entonces, examinar un tema íntimamente relacionado con lo anterior, a saber, la existencia de daño real, inmediato y preciso.

Coincidimos con el foro recurrido en que el trato desigual, respecto a competidores electorales a la misma posición, constituye un daño real, inmediato y preciso. Esto es así porque la ventaja de un competidor electoral sobre otro enerva uno de los principios fundamentales de nuestro ordenamiento electoral, a saber, la uniformidad.[20] Además, desde una perspectiva más concreta pero no menos importante, la gestión de obtener endosos conlleva una inversión de recursos materiales y humanos, que el partido que no cumplió con la disposición de ley podrá emplear para cubrir otros gastos del proceso electoral.

Corresponde aclarar que el suscribiente reconoce el derecho de los partidos a acogerse a métodos alternos de nominación directa y más aún a dirigir sus campañas conforme a sus objetivos políticos y a los reglamentos internos aplicables. Sin embargo, ello no puede ser contrario al ordenamiento electoral vigente. De ser así, reiteramos que se estaría infringiendo el

---

[19] *Fuster v. Busó*, 102 DPR 327, 328 (1974). (Énfasis suplido).
[20] Art. 5.1 (3) de la Ley Núm. 58-2020 (16 LPRA sec. 4561): "La administración de los organismos electorales de Puerto Rico dentro de un marco de estricta imparcialidad, **uniformidad**, pureza, transparencia y justicia".

valor fundamental de uniformidad protegido por el Código Electoral.[21]

De acoger la posición de los apelantes, en contravención a los derechos de los electores reconocidos por el cuerpo normativo en cuestión, estaríamos concediendo supremacía a los derechos y prerrogativas de los partidos políticos sobre los derechos electorales del ciudadano, lo cual es claramente inconsistente con la intención legislativa manifestada expresamente en el Art. 5.1(2) del Código Electoral.[22]

Debemos añadir que, aunque sí entendemos cómo la obtención de endosos promueve los valores protegidos por el Código Electoral de 2020, no tenemos tan claro cómo se alcanzan los intereses fundamentales protegidos por la legislación electoral vigente, concediendo a los partidos políticos una facultad ilimitada para ejercer su derecho a acogerse al mecanismo de método alterno y en consecuencia, determinar a su discreción cuándo corresponde obtener endosos.

Por otro lado, la *Sentencia* apelada no impide a los candidatos descalificados participar en el evento electoral de noviembre de 2024. Por el contrario, pueden competir en las próximas elecciones mediante el método de nominación directa. Al respecto, tomamos conocimiento judicial[23] de que hay un legislador independiente, que sin la estructura organizativa de un partido político ha sido elegido en más de una ocasión al Senado de Puerto Rico. Por tal razón, no vemos cómo un partido organizado a nivel nacional, con más

---

[21] 16 LPRA sec. 4561.
[22] *Id.*
[23] 32 LPRA Ap. VI, R. 201.

recursos humanos y materiales que el legislador independiente, no pueda competir efectivamente en el próximo evento electoral bajo dicho método. Más aún, cuando dicho partido cuenta con la colaboración institucional de otro que también tiene una organización política con presencia en toda la isla.

Por su parte, los apelantes alegan que "la CEE les notificó a los querellados mediante la plataforma de SIEN [también conocida como Sistema de Notificación de Intención de Aspirar a una Candidatura] que sus solicitudes de intención habían sido aceptadas por la Comisión y que "[s]i su partido ha sido acogido por método alterno de selección según el Código Electoral de Puerto Rico de 2020 no es requisito presentar peticiones de endosos".[24] Dicho argumento no amerita mayor atención, ya que es una norma firmemente establecida en el ordenamiento jurídico que "un error administrativo no crea estado de derecho que obligue a un cuerpo administrativo ni impida su corrección".[25]

Para terminar, da la impresión de que los apelantes reconocen la debilidad implícita de los argumentos que han esbozado ante los foros judiciales. Manifestación inequívoca de lo anterior es que después de haber argumentado vehementemente su postura, solicitan, que en caso de que se confirmara la *Sentencia* apelada, "como cuestión de justicia y equidad", se les conceda la oportunidad de recoger peticiones de endosos en un procedimiento especial, establecido por la CEE. Bajo dicho supuesto, nos piden, además, que ordenemos a la CEE "habilitar un proceso

---

[24] Alegato de los apelantes, pág. 46.
[25] *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997).

especial para que prospectivamente las partes apelantes recojan endosos para que sean certificados como candidatos".[26]

No se puede acceder a esta petición. Está ampliamente reconocido en nuestro ordenamiento jurídico que se acude a la equidad como recurso hermenéutico "cuando no haya ley aplicable al caso".[27] Esta no es la situación de la controversia ante nos, ya que como expusimos previamente, la presentación de endosos en procesos de primarias está regulada, específicamente, por los artículos 5.1, 7.10(1) y (2), 7.11(4), 7.15(3) del Código Electoral y la Sección 3.1 del Reglamento de Radicación de Candidaturas.

Por los fundamentos antes expuestos, modificaría la *Sentencia* apelada para reconocer legitimación activa a los querellantes y así modificada, la confirmaría en todo lo demás.

Félix Figueroa Cabán
Juez de Apelaciones

---

[26] Alegato de los apelantes, pág. 49.
[27] Art. 7 del Código Civil de 1930 (31 LPRA sec. 7). Véase, además, *Jack's Beach Resort, Inc. v. Cia Fideicomiso*, 112 DPR 344 (1982): "No quiere esto decir que la equidad suplante el Derecho porque aquélla es principio directivo abstracto en busca de justicia para el caso concreto, y se aplica con prudencia, sin violación de la certeza del Derecho y sin que padezca la seguridad jurídica, cuya uniformidad es eje de la ley".